**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | |
|---|---|
| **COURTNEY PARKER** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: |
| v. ) | |
| ) | |
| **SEMINOLE COUNTY SCHOOL** ) | |
| **DISTRICT**; **MARK EARNEST**, in his ) | **JURY TRIAL DEMANDED** |
| individual and official capacities; and ) | |
| **MICHAEL SHANE PURDY**, ) | |
| in his individual and official capacities, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

### PRELIMINARY STATEMENT AND INTRODUCTION

1.     Plaintiff Courtney Parker ("Nurse Parker") is the former School Nurse of the Middle High School in the Seminole County School District ("SCSD").

2.     Despite Nurse Parker's commitment to providing safe school nursing services at SCSD in the midst of the global COVID-19 pandemic, Defendants Superintendent Mark Earnest and Middle High School Principal Michael Shane Purdy continuously subjected Nurse Parker to unwarranted heightened scrutiny, First Amendment and whistleblower retaliation, and a work environment that was hostile to First Amendment speech.

3.     Since beginning employment at SCSD in 2016, Nurse Parker never had any documented performance issues until she engaged in protected speech opposing health and safety risks created by the school district after it reopened for students, and also reporting violations of

Georgia Department of Public Health ("GDPH") rules regarding managing students who test positive for COVID-19 or exhibit symptoms.

4.    Nurse Parker files this Complaint for declaratory, injunctive, and monetary relief against Defendants for First Amendment retaliation in violation of 42 U.S.C. § 1983.

5.    Nurse Parker seeks back pay and the lost economic benefits of her employment, reinstatement or front pay in lieu of reinstatement, compensatory damages, punitive damages against the Individual Defendants, reasonable attorney's fees and costs of litigation, and all other relief this Court may deem just.

## JURISDICTION AND VENUE

6.    Nurse Parker's claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a).

7.    Nurse Parker also asserts a state law claim over which this Court has supplemental jurisdiction under 28 U.S.C. § 1367 because it is so related to her federal claim that it arises from a common nucleus of operative fact.

8.    The violations of Nurse Parker's rights occurred in Seminole County, Georgia. Venue is proper under 28 U.S.C. § 1391(b) and (c), as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in the Albany Division of the United States District Court for the Middle District of Georgia.

## PARTIES

9.    Courtney Parker is a citizen of the United States and an adult resident of the state of Georgia. Nurse Parker resides in Donalsonville, GA, in Seminole County. She was employed by the Seminole County School District from approximately February 1, 2016, until her retaliatory termination on October 28, 2020.

10.     The Seminole County School System is a relatively small Georgia K-12 public school system that runs two schools: an elementary school and a combined "Middle High" school.

11.     Defendant SCSD's headquarters is located at 203 E 6th St. Donalsonville, GA 39845.

12.     Defendant Mark Earnest ("Defendant Earnest") is the Superintendent of SCSD, who served in this capacity at all times relevant to the allegations contained herein. He is being sued pursuant to 42 U.S.C. § 1983 in his individual capacity and may be served with process at his dwelling house or usual place of abode, or work place.

13.     Defendant Michael Shane Purdy ("Defendant Purdy") is the Principal of SCSD Middle High School.  He served as either an Assistant Principal or Principal at all times relevant to the allegations contained herein. Defendant Purdy is a resident of Seminole County. He is being sued pursuant to 42 U.S.C. § 1983 in his individual capacity.

## **FACTUAL BACKGROUND**

14.     Nurse Parker is a highly-skilled, knowledgeable, professional, and responsible school nurse.

15.     On August 12, 2020, the GDPH issued a document providing rules for school reopening procedures to Georgia K-12 public schools.

16.     In that document, the GDPH stated that as a rule, school districts **must** quarantine any individual who tests positive for COVID-19 from exposure to others in the school buildings, which means school districts **must** require any such individual to stay home.

17.     Additionally, any individual considered a "close contact" with someone who tests positive, would also be required to stay home.  A close contact is someone who spends more than fifteen minutes, less than six feet apart, with an individual who tests positive for COVID-19.

18.     On September 1, 2020, a student reported to Nurse Parker that she tested positive for Covid-19.

19.     Nurse Parker determined after doing an assessment that the child of a school administrator, who also attends the Middle High School, was in close contact with the student who tested positive and needed to be quarantined to comply with GDPH rules.

20.     She reported to this administrator that his child needed to be quarantined, but the administrator refused to quarantine his child from school, and school authorities refused to compel it.

21.     On September 3, 2020, a third student approached Nurse Parker stating he did not feel safe because he had lunch with the administrator's child and the infected child on September 1, 2020. This third student who was concerned about contracting COVID was quarantined.

22.     That same day, Nurse Parker contacted Penny Horne, Director of the Seminole County Health Department, to report her concerns regarding the District's compliance with rules regarding quarantining.

23.     Ms. Horne contacted an epidemiologist at the GDPH, Jacqueline Jenkins, who called Nurse Parker to confirm GDPH rules required the school to quarantine a child in close contact with an infected child.

24.     During this call, Plaintiff also reported to Ms. Jenkins that SCSD was not in compliance with GDPH rules regarding COVID-19 safe practices with respect to quarantining and contact tracing. She requested to schedule a meeting with GDPH and SCSD officials to

discuss the issues and review the rules and expectations of public health authorities in light of the COVID-19 public health crisis.

25.     Also that day, Nurse Parker received a call from Dr. Charles Ruis, a physician and GDPH Southwest Health District Health Director, who indicated he was going to contact Defendant Earnest to set up a teleconference to discuss compliance with GDPH rules.

26.     Nurse Parker subsequently contacted the administrator whose child was in close contact to the infected child to inform him that the GDPH stated that his child needed to be quarantined.

27.     The administrator appeared in her office very angry but ultimately agreed to take his child home.  Subsequently, his wife called Nurse Parker and cursed her out.

28.     On September 4, 2020, Nurse Parker was called into Defendant Purdy's office and reprimanded for a text message with a teacher identifying close contacts to another positive student.

29.     During the conversation, both Nurse Parker and the teacher expressed concern and opposition to Mr. Purdy's interpretation of the rules regarding mandatory quarantining during the pandemic.

30.     At that time, the school district was experiencing approximately three to five students with new positive diagnoses every week.

31.     On September 9, 2020, the GDPH convened the teleconference requested by Nurse Parker, which included Defendant Earnest and school district administrators regarding concerns Nurse Parker reported about quarantining and contact tracing.

32.     During this call, the GDPH specifically instructed school officials that they needed to comply with public health rules regarding contact tracing and quarantining.

33.    The District was required to perform contact tracing in classrooms, the gymnasium, the cafeteria, and other areas where students gather.

34.    Following the call, Defendant Earnest verbally reprimanded Nurse Parker, called her an "embarrassment," and expressed contempt for public health officials getting involved in his decision-making.

35.    The next day, Defendant Purdy called Nurse Parker into his office and verbally reprimanded her for "her husband speaking negatively about the administration's handling of Covid-19 while in a barber shop."

36.    The School District then refused to implement the GDPH's instructions regarding contact tracing.

37.    The District reprimanded Nurse Parker for completing contact tracing assessments, and it also refused to fully and accurately document when children of District employees were identified in a contact-tracing assessment.

38.    When Nurse Parker attempted to work with the GDPH to properly contact trace the children of teachers, she was reprimanded by Defendant Purdy.

39.    On September 1, 2020, six to eight students were in Nurse Parker's office awaiting pick up after being identified for quarantine.

40.    When he learned of the students in Nurse Parker's office, Defendant Purdy came and berated her, raised his voice, and asked, "Haven't we quarantined enough? We might as well just shut the whole school down with the amount of students you have quarantined!"

41.    He raised his voice in the presence of the students, who expressed concern they had done something wrong. Approximately half of these students were the children of District employees.

42.     One of the students quarantined in Nurse Parker's office on September 1st came back to her office the next day, crying about feeling unsafe.

43.     This child's fears emboldened Nurse Parker to follow through with the GDPH's rules despite pressure from Defendants not to quarantine students who were exposed or diagnosed, including sending the child of an administrator home who was exposed to a positive case.

44.      The District purposely refused to comply with the GDPH's contact-tracing requirements so that the numbers reported of students with positive tests, or close contacts, would be kept low so that the schools could remain open for in-person instruction.

45.     The District also did not want children of teachers who were identified in contact-tracing to be reported because the administration did not want staff to take time off work to care for quarantined children resulting in a school closing due to lack of teachers.

46.     On October 19, 2020, after Nurse Parker again expressed concerns about the District's handling of the COVID-19 pandemic at school and the retaliatory work environment, Mr. Purdy told Nurse Parker that "she was a fine nurse but needed to keep her opinions to herself."  He also told Nurse Parker at that time that he would have to "rethink his nursing staff."

47.     On October 26, 2020, a new positive case was reported. Nurse Parker contact-traced four close contacts and  prepared a list of students exposed.

48.     She reported the cases to the GDPH and confirmed what she was required to do, and then issued instructions to quarantine the exposed students.

49.     In response, she began to receive harassing emails from Defendant Purdy stating that she was not following the rules.

50.     In contravention of the directives from GDPH discussed during the conference of September 9th, Defendant Purdy told Nurse Parker that she was not to quarantine students that had been exposed in PE.

51.     On October 27, 2020, Nurse Parker reported Defendant Purdy's violations of GDPH rules to Defendant Earnest.

52.     In response, Defendant Earnest sided with Purdy stating that Nurse Parker was, "like a child in a nurse's position, not following any rules."

53.     When Nurse Parker got home that evening, she posted on Facebook that she was "stuck in between wanting to take the easy way out to please everyone, or the uphill battle and do the right thing."  This was the extent of the post, which made no mention of Defendants.

54.     On October 28, 2020, Purdy terminated Nurse Parker based on the Facebook post.

55.     During their meeting, Purdy mentioned numerous comments Nurse Parker made to Defendant Earnest the day before.

56.     Nurse Parker's termination letter states that she had been given three warnings about "inappropriate social media postings," but she had never posted anything related to her job or SCSD on social media on any other occasion or been reprimanded for any post related to the school.

**COUNT I**
**First Amendment Retaliation and Retaliatory Hostile Work Environment under 42 U.S.C. 1983**
*Against all Defendants*

57.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

58.     Plaintiff engaged in constitutionally protected activity by, *inter alia*, speaking as a citizen on matters of public concern, including but not limited to: opposing and reporting Defendants' violations of Georgia Department of Public Health rules for the safe reopening of

schools, quarantining of individuals exposed to or diagnosed with COVID-19, and contact-tracing and reporting of cases of exposure to COVID-19.

59.     Defendants took adverse employment actions against Plaintiff because of her constitutionally protected speech, and/or it was a motivating factor in their decisions to take those actions against her.

60.     Defendants' actions have deprived Plaintiff of her right to freedom of speech as guaranteed by the First Amendment to the Constitution of the United States.

61.     This violation of rights was proximately caused by Defendants, who were acting under color of state law, and local ordinances, regulations, customs or usages of the Seminole County School District, in violation of 42 U.S.C. § 1983.

62.     In addition, Defendants Earnest and Purdy acted in their individual and official capacities in investigating and firing Plaintiff for exercising her First Amendment rights.

63.     Defendants' actions were willful, deliberate, and intended to cause Plaintiff harm and/or were committed with reckless disregard of the harm caused to Plaintiff, and were in derogation of Plaintiff's federally protected rights.

64.     As a direct and proximate result of Defendants' actions against Plaintiff, she has been damaged and is entitled to the relief set forth in the Prayer for Relief below.

## COUNT II

### Violation of Georgia Whistleblower Act, O.C.G.A. § 45-1-4
*Against Defendant SCSD*

65.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

66.     Nurse Parker is and was, at all relevant times, a public employee as that term is defined by O.C.G.A. § 45-1-4(a)(3).

67.     Defendant SCSD is a public employer as that term is defined by O.C.G.A. § 45-1-4(a)(4).

68.     From August 2020 to October 2020, Nurse Parker complained to her supervisors and the Georgia Department of Public Health that Defendants were violating GDPH rules regarding the safe reopening of schools during the COVID-19 pandemic, with respect to accurately identifying and reporting of individuals exposed to COVID-19, quarantining such individuals, and performing assessments for accurate contact-tracing.

69.     Defendant SCSD retaliated against Nurse Parker for disclosing violations of these rules by terminating her.

70.     As a direct and proximate result of Defendants' actions against Plaintiff, she has been damaged and is entitled to the relief set forth in the Prayer for Relief below.

### REQUESTED RELIEF

WHEREFORE, Nurse Parker demands a TRIAL BY JURY and for the following relief:

A.     Adjudicate and declare that Defendants have violated Plaintiff's federally protected rights as pled above;

B.     Permanently enjoin Defendants from committing similar violations in the future;

C.     Award Nurse Parker damages in an amount to be proved at trial for economic losses, damage to professional reputation, and pain and suffering that he has experienced as a result of Defendants' unlawful conduct;

D.     Award Plaintiff pre-judgment and post-judgment interest as required by law;

E.     Award Plaintiff compensatory damages for emotional pain and suffering as determined by a jury;

F.      Award Plaintiff compensatory and punitive damages against the individually named Defendants Earnest and Purdy pursuant to 42 U.S.C. § 1983, and all other applicable federal and state laws in an amount to be determined by the trier of fact;

G.      Award Nurse Parker attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

H.      Grant such additional relief as may be proper and just.

Respectfully submitted this 19th day of January, 2021.

/s/ Edward D. Buckley
Edward D. Buckley
GA Bar No. 092750
edbuckley@buckleybeal.com
**BUCKLEY BEAL, LLP**
600 Peachtree Street NE, Suite 3900
Atlanta, GA 30308
Telephone: (404) 781-1100
Facsimile: (404) 781-1101